FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 09, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHELLY C.,[1]<br>                    Plaintiff,<br><br> vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>                    Defendant. | No. 4:18-cv-05137-MKD<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 16, 17 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 16, 17. The parties consented to proceed before a magistrate judge. ECF No. 4. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's Motion, ECF No. 16, and denies Defendant's Motion, ECF No. 17.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [she] is not only unable to do [her] previous work[,] but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

ORDER - 3

gainful activity," the Commissioner must find that the claimant is not disabled.  20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On June 24, 2014, Plaintiff applied Title XVI supplemental security income benefits alleging a disability onset date of June 18, 2013. Tr. 222-27. The application was denied initially, Tr. 98-106, and on reconsideration, Tr. 107-09. Plaintiff appeared before an administrative law judge (ALJ) on April 19, 2017. Tr. 33-74. On May 23, 2017, the ALJ denied Plaintiff's claim. Tr. 12-29.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 24, 2014. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia, obesity, and depression. Tr. 17.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 17. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [S]he can lift up to twenty pounds occasionally, ten pounds frequently. She can sit for up to six hours a day, and can stand or walk for up to three hours a day, and for no more than thirty minutes at a time. She must be allowed to change position from sitting to standing once an hour. She cannot climb ladders, ropes, and scaffolds. She can occasionally crawl and kneel. She can have

occasional exposure to vibration, heat and cold. She can perform
simple, repetitive jobs. She can have occasional, brief contact with
the general public.

Tr. 19.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 22. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as marker, small products assembler II, and inspector/hand packager. Tr. 23. The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from June 24, 2014, the date the application was filed, through the date of the ALJ's decision. Tr. 24.

On June 12, 2018, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ properly evaluated Plaintiff's symptom claims;

1    3.  Whether the ALJ properly weighed the lay witness testimony; and

2    4.  Whether the ALJ's step five finding is supported by substantial evidence.

3    ECF No. 16 at 7.

4    **DISCUSSION**

5    **A. Medical Opinion Evidence**

6    Plaintiff contends the ALJ improperly weighed the opinions of Meneleo

7    Lilagan, M.D. and Erum Khaleeq, M.D, and failed to incorporate into the RFC

8    limitations identified by medical expert Allan Duby, M.D.  ECF No. 16 at 10-16.

9    There are three types of physicians: "(1) those who treat the claimant

10   (treating physicians); (2) those who examine but do not treat the claimant

11   (examining physicians); and (3) those who neither examine nor treat the claimant

12   [but who review the claimant's file] (nonexamining physicians)."  *Holohan v.*

13   *Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).  Generally,

14   a treating physician's opinion carries more weight than an examining physician's

15   opinion, and an examining physician's opinion carries more weight than a

16   reviewing physician's opinion.  *Id.* at 1202.  "In addition, the regulations give more

17   weight to opinions that are explained than to those that are not, and to the opinions

18   of specialists concerning matters relating to their specialty over that of

19   nonspecialists."  *Id.* (citations omitted).

20

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

*1. Dr. Lilagan*

Dr. Lilagan is Plaintiff's long-time treating physician. *See* Tr. 555 (listing first date of treatment as December 22, 2004); Tr. 406 (listing first date of treatment as March 19, 2013). Dr. Lilagan rendered three functional assessments. On September 3, 2015, Dr. Lilagan prepared a WorkFirst form in which he opined that Plaintiff's fibromyalgia and "persistent joint pain and body aches" would limit her to sedentary work up to ten hours per week. Tr. 413-15. On October 6, 2015,

Dr. Lilagan prepared a medical report opining Plaintiff is limited to sedentary

work, but would miss four or more days per month because "she has at times more

significant body aches and pain," Tr. 407, and she would need to lie down for at

least thirty minutes every day "if her diffuse body aches start bothering her much."

Tr. 406.  Finally, in March 2017, Dr. Lilagan prepared another medical report

opining that due to Plaintiff's joint pain and fibromyalgia, Plaintiff would need to

lie down for at least one hour during the day, would miss four or more days of

work per month, and would be off-task over 30% of the workweek.  Tr. 556.

The ALJ assigned Dr. Lilagan's opinions little weight.  Because Dr.

Lilagan's opinions were contradicted by medical expert Dr. Duby, the ALJ was

required to provide specific and legitimate reasons for rejecting Dr. Lilagan's

opinions.  *See Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Lilagan's opinions were "inconsistent" with his

treatment notes, "which do not document a level of severity to suggest the claimant

would have difficulty sustaining a forty-hour workweek."  Tr. 22.  A medical

opinion may be rejected if it is unsupported by medical findings.  *Bray*, 554 F.3d at

1228; *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas

v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d

1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.

1992).  Furthermore, a physician's opinion may be rejected if it is unsupported by

the physician's treatment notes. *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). Here, the ALJ did not identify any treatment notes that the ALJ found were inconsistent with Dr. Lilagan's opinions. Tr. 22. The ALJ described Dr. Lilagan's treatment notes as "brief," yet the record contains nearly 100 pages of regular visits spanning from October 3, 2012 to March 16, 2017, where he treated Plaintiff's complaints of fatigue and persistent pain. Tr. 315-53, 357-98, 441-54. Each visit typically involved a two-page treatment note. The ALJ's assessment of Dr. Lilagan's treatment records consists of the following statement: "Outside of that [walker] prescription, the claimant's provider has generally only provided medication management." Tr. 20. In this instance, without more explanation and specificity than the ALJ provided, this is not persuasive as an inconsistency regarding the severity of Plaintiff's fibromyalgia condition. While in some situations a citation to treatment consisting primarily of only medication management might be inconsistent with severe functional restrictions, here, there is no discussion in the ALJ's decision or record of the type of treatment, the efficacy of treatment, or what would or could address Plaintiff's persistent pain other than medication management. *See* Tr. 548 (rheumatologist treatment record discussing medications that "would be effective in managing symptoms."). Dr. Duby testified that the treatment undertaken by Dr. Lilagan had "all been appropriate[,] and you know patients don't always respond." Tr. 44. Moreover, Dr. Lilagan's treatment

notes evidence a long-standing history of reported musculoskeletal pain, stiffness, sensation abnormalities, and fatigue, and also include physical examination findings revealing pain locations. *See, e.g.*, Tr. 377 (providing a doctor's note stating Plaintiff should not lift more than 10 pounds and avoid prolonged standing and walking); Tr. 441 (describing sensation of "pins and needles" in the legs); Tr. 450 (documenting complaints of difficulty moving, especially in the mornings and difficulty with ambulation requiring Plaintiff to hold onto things to ambulate); Tr. 474 (noting Plaintiff would have good days and bad days where she would have "significant body aches."); Tr. 477, 480, 486; *see also* Tr. 91 (explanation by reviewing doctor stating physical examination findings by the treating sources "are complimentary with each other" and "are supportive."). On January 5, 2015, Dr. Lilagan also prescribed a cane to "help with ambulation," Tr. 389, and then in September 2016, a 4-wheeled walker with a seat, Tr. 467. Accordingly, the ALJ's conclusory reason, without explanation, is insufficient to reject a treating physician's opinion under Ninth Circuit precedent. *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014).

Second, the ALJ found that Dr. Lilagan's opinions were based "primarily on the claimant's own self-reports." Tr. 22. A physician's opinion may be rejected if it based on a claimant's properly discounted complaints. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec Admin.*, 169

F.3d 595, 602 (9th Cir. 1999); *Fair*, 885 F.2d at 604. Here, in May 2014 and prior

to his three opinions, Dr. Lilagan had referred Plaintiff to rheumatologist Nina

Flavin, M.D. Tr. 333 (referring to rheumatology for "further evaluation and

management of her polyarthralgia and worsening body aches."). The ALJ's

finding overlooks the fact that Plaintiff's subjective reports were buttressed in this

case by Dr. Flavin's evaluation and finding that Plaintiff was tender at 18/18

trigger points associated with fibromyalgia. Tr. 355; Tr. 376. This record does not

support the ALJ's conclusion that Dr. Lilagan relied primarily on Plaintiff's own

self reports in formulating his opinions. Moreover, the Ninth Circuit has

recognized that "fibromyalgia's symptoms are entirely subjective," and "[i]n the

context of a disease that is diagnosed primarily through subjective self-reports, the

fact that a treating physician relied on subjective complaints is not itself a valid

basis to reject the physician's opinion." *See Belanger v. Berryhill,* 685 Fed. App'x

596, 598 (9th Cir. 2017) (citing *Reddick v. Chater*, 157 F.3d 715, 725-26 (9th Cir.

1998) (applying reasoning in context of chronic fatigue syndrome, the diagnosis of

which is also based on subjective self-reports)); *see also Revels v. Berryhill*, 874

F.3d 648, 663 (9th Cir. 2017) (embracing the view that "[f]ibromyalgia is

diagnosed 'entirely on the basis of patients' reports of pain and other

symptoms.' "). Defendant claims the ALJ's reason was "justified," without any

case-specific analysis. ECF No. 17 at 5. Due to the nature of the impairment, this was not a specific and legitimate reason to reject Dr. Lilagan's opinion.

Third, the ALJ discounted Dr. Lilagan's opinions because he was a family practitioner and not a specialist in internal medicine and rheumatology as Dr. Duby. Tr. 22. A medical provider's specialization is a relevant consideration in weighing medical opinion evidence. 20 C.F.R. § 416.927(c)(5). While the ALJ may give more weight to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists, it would be error for the ALJ reject treating physician's opinions solely based on this reasoning. *See Sprague v. Bowen*, 812 F.2d 1226, 1231 (9th Cir. 1987) (treating physician qualified to give medical opinion as to mental state despite not being a psychiatrist); *Lester*, 81 F.3d at 833 (holding where a treating physician provided treatment for the claimant's psychiatric impairment, the doctor's opinion constitutes "competent psychiatric evidence" and may not be discredited on the ground the doctor was not a board certified psychiatrist).

Last, the ALJ noted that Dr. Lilagan's opinions were inconsistent with the opinion of Dr. Duby, who had reviewed Dr. Lilagan's treatment notes. Mere disagreement between a treating physician and a nonexamining physician is an insufficient basis upon which the ALJ can rely to give a treating physician less weight. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Conflicting

substantial evidence must consist of more than the medical opinion of the nontreating and nonexamining doctor. *Id.*

In sum, the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for discounting the opinions of Plaintiff's long-term treating primary physician and granting significant weight to the opinion of the non-examining, non-treating medical expert. *Garrison*, 759 F.3d at 1012 ("[w]here an ALJ does not . . . set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."). Remand is required to properly address Dr. Lilagan's opinions.

### 2. Dr. Khaleeq

On February 28, 2015, at the request of Disability Determination Service (DDS), Dr. Khaleeq performed a psychiatric evaluation, which included a clinical interview, mental status examination, and record review. Tr. 400-05. Dr. Khaleeq opined that Plaintiff (1) could perform simple and repetitive tasks "but might get distracted with detailed and complex tasks"; (2) "would accept instructions from supervisors, although it may take some time to perform work activities on a consistent basis due to her not being able to function for days in a row and not leaving her bed"; and (3) "may have difficulty maintaining attendance in the workplace as she had quit working last year and had even difficulty keeping up with her daily chores and taking care of her two children at home." Tr. 404. Dr.

Khaleeq also opined that the "usual stress encountered in the workplace could further aggravate her psychiatric condition."  Tr. 405.

The ALJ acknowledged Plaintiff's limitation to simple tasks, but rejected Dr. Khaleeq's opinion that Plaintiff would have problems maintaining consistent work or attendance because Dr. Khaleeq did not review the entire medical record and her opinion was based on Plaintiff's subjective complaints.  Tr. 22.  As this case is being remanded to readdress Dr. Lilagan's opinions, the ALJ is instructed to review and readdress all opinion evidence in the record, including Dr. Khaleeq's opinion.

### 3. *Dr. Duby*

Plaintiff contends the RFC and the resulting hypothetical posed to the vocational expert failed to account for the limitations opined by Dr. Duby.  ECF No. 16 at 13-14.  Specifically, Dr. Duby testified at the administrative hearing that Plaintiff can "[s]it for two hours at a time a total of six hours in the day," "stand for 30 minutes at a time a total of one and a half hours in the day," and "walk for 30 minutes at a time a total of one and half hours a day."  Tr. 48-49.  Plaintiff's counsel sought clarification of this opinion asking, "does that mean standing three hours a day?"  Tr. 50.  Dr. Duby clarified he meant "three hours in a day," and as to the need to alternate positions, "you stand *or* you walk for 30 minutes and then you sit down and then after a period of time you get up and you *either* stand *or*

walk for 30 minutes." Tr. 50 (emphasis added). The hypothetical posed by the ALJ imposed a restriction of "stand and walk up to three hours a day no more than 30 minutes at a time either standing *or* walking," with the need to change position "from sit to stand *or* walk once an hour." Tr. 69.

Plaintiff contends the ALJ departed from Dr. Duby's opinion by combining the restrictions for standing and walking to total three hours. ECF No. 18 at 4. Plaintiff further claims that because none of the jobs identified at step five provide an opportunity to walk around, Plaintiff is limited to six hours of sitting and one and half hours of standing and therefore unable to work a full 8-hour workday. ECF No. 16 at 14. However, Plaintiff's contention ignores Dr. Duby's clarification. The ALJ did not error in the characterization of Dr. Duby's opinion as clarified by his testimony. Tr. 50. Nevertheless, given that Plaintiff's treating provider opined that Plaintiff is limited to sedentary work where limited walking and standing is necessary, this issue can and should be revisited on remand.

**B. Subjective Symptom Claims**

Plaintiff also challenges to the ALJ's evaluation of Plaintiff's symptom claims. ECF No. 15 at 8-14. The ALJ's evaluation of Plaintiff's symptom claims and the resulting limitations relies substantially on the ALJ's assessment of the medical evidence. Tr. 20 (rejecting Plaintiff's allegations as inconsistent with her record of treatment and the longitudinal medical evidence of record). Having

determined a remand is necessary to readdress the medical evidence and develop the record, if necessary, any reevaluation must necessarily entail a reassessment of Plaintiff's subjective symptom claims. Thus, the Court need not reach this issue and on remand the ALJ must also carefully reevaluate Plaintiff's symptom claims in the context of the entire record. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

**C. Lay Witness Testimony**

Plaintiff also challenges the ALJ's determination to give little weight to the third-party statement of Plaintiff's former supervisor. ECF No. 16 at 15-16.

An ALJ must consider the statement of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (ALJ's silent disregard of uncontradicted lay testimony of Plaintiff's former boss and co-worker was error). Lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id.*; 20 C.F.R. § 416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). If a lay witness statement is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

Prior to the administrative hearing, Plaintiff obtained a lay witness statement from William Fisher, her supervisor for several years. Tr. 36, 312. Mr. Fisher stated that while Plaintiff had displayed a "great work ethic," she was eventually "let go" because of her increasingly unreliability due to her inability to perform the physical aspects of her job due to pain. Tr. 31. He further opined that "if her illness continued to get worse," she would be "forced to stay out of the workforce" due to her inability to perform "most tasks without causing herself immense pain." Tr. 31.

The ALJ gave Mr. Fisher's statements little weight because the functional level required by her janitorial job was not representative of Plaintiff's functioning while performing at a light exertional level. Tr. 22. The ALJ observed that in Plaintiff's work, she was required to walk and stand for eight hours and would work up to seven days every week, an exertional level well in excess of the ALJ's RFC finding. Tr. 22. The ALJ provided a germane reason for discounting Mr. Fisher's statements. Moreover, although the lay witness may provide his observations, he can only speculate as to the progression of her illness and her employability after she ceased work.

Nevertheless, as the case must be remanded on other grounds, the ALJ should reevaluate all of the evidence, including the lay witness evidence in the record.

**D. Step Five**

Finally, Plaintiff contends the ALJ's step five findings were improper because the assessed RFC and the resulting hypothetical posed to the vocational expert, failed to account for Plaintiff's limitations, as opined by Dr. Lilagan. ECF No. 16 at 19-20. As discussed above, the ALJ erred by improperly rejecting Dr. Lilagan's opinion, and should reconsider the medical opinion evidence on remand. Given the necessity of the remand, it would be premature to address Plaintiff's step five argument. Upon remand, the ALJ must should reassess the RFC and perform the remaining steps in the sequential analysis anew.

**E. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 16 at 21.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague*, 812 F.2d at 1232 (citing *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*, 379 F.3d at 595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir.

2014).  However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits.  *Revels*, 874 F.3d at 668.  Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, further proceedings are necessary because the record as a whole raises doubts as to whether Plaintiff is disabled within the meaning of the Social Security Act. *See Treichler,* 775 F.3d at 1107.  Remand for further consideration of this the treating physician's opinions  is necessary to provide the ALJ an opportunity for a fuller explanation of the findings.  On remand, the Court strongly encourages the ALJ to order a consultative physical examination with a rheumatologist.  With the benefit of additional opinion evidence obtained from a consultative physical

examination, the ALJ will be able to resolve the ambiguities regarding Plaintiff's diagnoses and the severity of her symptoms which were identified by Dr. Duby at the prior hearing. Tr. 41 ("There is little reference to how the fibromyalgia affects her."); Tr. 44 ("I do feel there is a good possibility that she has an underlying inflammatory arthritis . . .").

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 16, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 17, is **DENIED**.

3. The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED July 9, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 22